UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARRY KIM

PLAINTIFF

Index No.:
15 Cv 2474(ERK)(SLT)

V.

ECF CASE

THE HARTFORD LIFE INSURANCE COMPANY;
GROUP LONG TERM DISABILITY, BASIC
TERM LIFE, SUPPLEMENTAL DEPENDENT LIFE
SUPPLEMENTAL TERM LIFE, BASIC ACCIDENTAL
DEATH AND DISMEMBERMENT PLAN FOR
EMPLOYEES OF  SCHOOL OF VISUAL ARTS, INC.;
AND, SCHOOL OF VISUAL ARTS INC.

DEFENDANTS

------------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


Robert J. Bach, Esq.
60 East 42nd Street
40th Floor
New York, NY 10165
212-867-4455
212-697-0877(Fax)
rjbachesq@hotmail.com
Attorney for Plaintiff.

TO:    Patrick W. Begos, Esq.
       Begos, Brown & Green, LLP
       2425 Post Road, Suite 205
       Southport, CT 06890
       Attorneys for Hartford Life Insurance Co.

## TABLE OF CONTENTS

Table of Authorities                                                                                          ii

Introduction                                                                                                   1

Summary of Facts                                                                                               2

Questions Presented                                                                                            4

Argument

I.      Hartford's adjudication of Ms. Kim's appeal did not provide her         5
        with a full and fair review because Hartford had a conflict of interest
        and that conflict affected its ability to render a full and fair review of
        her claim and appeal.

II.     In adjudicating Ms. Kim's appeal, Hartford failed to review her          9
        allegations that Hartford's criteria for Mental Illness and Mental
        Disorder were not consistent with current medical research,
        and that failure was a breach of Hartford's fiduciary duty.

III.    The definition of Mental Illness and Mental Disorder are arbitrary      12
        and capricious because they are obsolete and do not recognize
        that current medical research considers that bipolar disorder
        is a physical illness.

IV.     The Policy's reference to the DSM-IV-TR  for the purpose of             14
        determining if a disease is a physical condition or a Mental
        Disorder is arbitrary and capricious. There are numerous
        illnesses listed in the DSM-IV-TR, which are not mental illnesses,
        and therefore are improperly included by the Policy's definition
        of Mental Illness Disability.

Conclusion                                                                                                    19

i

## TABLE OF AUTHORITIES

**Cases**

Central States Pension Fund v. Central Transport, Inc.,                                    10
    472 U.S. 559, 105 S. Ct. 2833 (1985).

Donna v. Memorial Sloan Kettering, 2010 US Dist LEXIS 21717                               19
    (SDNY 2010) aff'd 487 Fed. Appx 670, 2012 US App. LEXIS 22925
    (2nd Cir. 2012).

Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133,                                5,6
    2010 U.S. App. LEXIS 12937 (2d Cir. N.Y. 2010).

Firestone Tire and Rubber Co., v. Bruch, 489 U.S. 101,109 S. Ct. 948,                     5,6
    103 L. Ed. 2d 80 (1989).

Glenn v. Metropolitan Life Ins Co. 554 US 105, 128 S, Ct. 2343 (2008).                     5

Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,                                6
    46 F.3d 1264 (2d Cir. 1995).

Kinstler v. First Reliance Standard Life Ins. Co.,                                         5
    181 F.3d 243 (2d Cir. 1999).

Martin v. Hartford Life & Accident Ins. Co., 478 Fed. Appx. 695,                           5
    2012 U.S. App. LEXIS 7879 (2d Cir. N.Y. 2012).

McCauley v. First Unum, 551 F.3d 126 (2d Cir. 2008).                                       6

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995).                                6

Pagan v. NYNEX Pension Plan, 52 F.3d 438 (2d Cir. 1995).                                   5

Tribble v. Edison, 135 S. Ct. 1823, 191 L. Ed. 2d 795, 2015 U.S. LEXIS 3171, (2015).     10

Wilkins v. Mason Tenders Dist Council Pen Fund, 46 F.3d 1264(2d Cir. 1995)                 6

**Table of Authorities**
cont

**Other**

ERISA
29 USC §1001 et seq.,                                                    1
29 USC §1104(a)(1)                                                     9,10
29 USC §1132 (a)(1)(B) and                                               1
29 USC §1132 (a)(3)(A) and (B)                                          1
29 U.S.C. § 1133(1).                                                     6

U.S. Department of Labor Regulations
29 CFR 2560.503-1(g)(1)(ii).                                            6
29 CFR 2509.75-8 Questions and answers relating to fiduciary          11
    responsibility under the Employee Retirement Income Security
    Act of 1974 [40 FR 47491, Oct. 9, 1975.

New York State Insurance Law
Section 3221(l)(5)(B)(ii) ,                                             12

Diagnostic and Statistical Manual of Mental Disorders,               passim
    Fourth Edition, Text Revision[1]  (DSM-IV-TR")

## INTRODUCTION                                             4.29

This is a suit by Marry Kim, pursuant to the Employee Retirement Income Security Act of 1974, as amended, ("ERSIA"), 29 USC 1001 et seq., specifically 29 USC §1132 (a)(1)(B) and §1132(a)(3)(A) and (B),  to continue the payment of her long term disability benefit.

The Hartford Life Insurance Company  ("Hartford"), the insurer and contract administrator, determined that as of May 3, 2010 Ms. Kim was disabled by Bipolar Disorder 1.  Pursuant to the terms of the insurance policy, Hartford paid her benefits for 24 months.

In 2012 Hartford determined that under the terms of the Policy she was not entitled to continued payments, relying on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision[1]  (DSM-IV-TR") which classified Bipolar Disorder as a mental disease. Ms. Kim asserts that the terms of the Policy and the DSM-IV-TR is based on outdated medical concepts and can not be relied on with respect to disabilities based on Bipolar Disorders, and that it was improper for Hartford to base its determination on them. Current medical and genetic research demonstrates that Bipolar Disorder is a biological disease brain disease, and therefore, is a physical sickness.

Ms. Kim requests that the Court order Hartford to continue paying her benefits as

---

1.    The Diagnostic and Statistical Manual of Mental Disorders Fourth Edition ("DSM-IV") was published in 1994. It was revised in 2000 and is called The Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Text Revision, ("DSM-IV-TR" or "TR:__"). It was the applicable version of the DSM-IV when Ms. Kim's claim was filed.

it would for any other physical sickness under the Policy and to review its reliance on

the DSM-IV-TR and/or  to direct Hartford to reconsider her appeal.

## I.    SUMMARY OF FACTS.

## A.    Initial Claim for LTD Benefits.

Ms. Kim was employed by the School of Visual Arts ("SVA") in May 2003

(Administrative Record filed by Hartford, page 327, "(AR:__)") and became a

participant in the Group Long Term Disability, Basic Term Life, Supplemental

Dependent Life, Supplemental Term Life, Basic Accidental Death and Dismemberment

Plan for Employees of  School of Visual Arts, Inc. ("Plan"). The Plan was funded by an

insurance policy purchased from The Hartford Life Insurance Company. Under the

Policy included in the Administrative Record, (AR:1-64) Hartford was the contract

administrator, and had the authority and responsibility to interpret the terms and

conditions of the Policy (AR:17) and to decide claims and appeals. (AR:15)

At SVA, Ms. Kim was employed in the Continuing Educational Department as an

Office Assistant. (AR:314). She was responsible for answering phone inquiries, keeping

track of student addresses, ordering supplies, maintaining data bases, using Excel and

Filemaker programs.(AR:298)  In 2009 she became ill. She had short and long term

memory issues; cognitive issues; and was irritable and fearful. (AR: 81 - 08/04/2011)

See also (AR:77  - 11/09/ 2011) She was diagnosed with bipolar disorder (Id.) and had

to stop working as of November 4, 2009. (AR:327)

In early May, 2010, she filed an application with Hartford for long term disability

benefit from Hartford. (AR:299-322). After reviewing her submissions, in a letter dated

June 1, 2010, Hartford awarded her a long term disability benefit effective May 3, 2010.

2

(AR:132-135)

## A.    Denial of the claim for continued benefits.

In late 2011 and early 2012, Hartford requested additional information to determine if she would continue to be eligible for additional benefits after the two year period. In a letter dated February 14, 2012 Ms. Kim was advised by Hartford (Karen Andreas-Moses) that because she was disabled due to Bipolar Disorder, a "Mental Illness", pursuant to the Policy and the DSM-IV-TR, her benefits were limited to 24 months and would end as of May 2, 2012. (AR:112-114)

The letter said that the Policy, limited Mental Illness benefits to 24 months, and that "[w]e based our decision to terminate your claim on policy language".(AR:112) The letter also stated:

> In order to continue to be considered for LTD benefits beyond 05/02/12, you must be unable to perform the duties of your occupation due to a physical condition. At this time, we do not have evidence of any **physical disability** that is preventing you from working.(AR:113)  [emphasis added]

## B.    Ms. Kim's appeal.

In a letter dated August 13, 2012 Ms. Kim, by her attorney, filed an appeal arguing, *inter alia*, that the decision was made based on the Policy booklet and not the Plan; New York Statute classified bipolar disorder as a physical illness, and therefore should not be subject to the 24month limitation; and, that current medical research demonstrates that bipolar disorder is a physical illness and should not be subject to the 24 month limitation. (AR:214,fns 2 and 3)

## C.    The denial of the appeal.

In a letter dated December 6, 2012, (AR:105-107)  Ms. Kim was advised that her

3

appeal was denied because the decision to apply the [24 month] Mental Disorder

limitation to Marry Kim's claim was appropriate because Bipolar Disorder was listed in

the DSM - IV, as a mental disorder.(AR:106)

The letter acknowledged that Ms. Kim asserted that under New York State Law,

bipolar disorder is biologically based, that the National Institute of Mental Health

considers that bipolar disorder is a serious brain disorder, and that Ms. Kim claimed that

she was "unable to  perform the duties of her occupation because of a biological

condition and therefore is entitled to continue benefits".(*Id*.)

The letter then stated:

> The basis of your appeal appears to center on the **notion** that bipolar disorder
> should be classified as a physical illness rather than a mental disorder. Your
> appeal request does not include any information that specifically demonstrates a
> link between Ms. Kim's condition and a **physical disability.** Therefore the
> medical record does not support your claim that Ms. Kim's disability is the result
> of a physical condition".(Id.)   [Emphasis added].

## QUESTIONS PRESENTED?

1.    Did Hartford provide Ms. Kim a full and fair review of her claim and appeal?

2.    Did Hartford have a fiduciary duty to review Ms. Kim's claim that the criteria its
      applies for determining if a condition was mental illness or mental disorder was
      not consistent with current medical research?

3.    Is the that the criteria Hartford uses for determining if a condition was mental
      illness or mental disorder consistent with current medical research?

4.    Should the terms of the Policy be enforced, because they are internally
      inconsistent and based on medical research that is outdated?

I.    **HARTFORD'S ADJUDICATION OF MS. KIM'S APPEAL DID NOT PROVIDE HER WITH A FULL AND FAIR REVIEW BECAUSE HARTFORD HAD A CONFLICT OF INTEREST AND THAT CONFLICT AFFECTED ITS ABILITY TO RENDER A FULL AND FAIR REVIEW OF HER CLAIM AND APPEAL.**

A.    **Standard of Review**

Since the Policy produced by Hartford as part of the Administrative Record reserved to Hartford the absolute discretion to determine questions of benefit eligibility, (AR:17), under ERISA, its determination is reviewed under the arbitrary and capricious standard. *Firestone Tire and Rubber Co., v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249-252 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kinstler*, 181 F.3d at 249 (2d Cir. 1999), quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995).

B.    **Hartford had a conflict of interest**.

However, since Hartford pays for benefits and adjudicates the claims and appeals,  it has a structural conflict of interest (*Glenn v. Metropolitan Life Ins Co.* 554 US 105, 112,  128 S, Ct. 2343 (2008),  *Durakovic v. Bldg. Serv. 32 BJ Pension Fund,* 609 F.3d 133, 2010 U.S. App. LEXIS 12937, (2d Cir. N.Y. 2010) , *Martin v. Hartford Life & Accident Ins. Co.*, 478 Fed. Appx. 695, 2012 U.S. App. LEXIS 7879, (2d Cir. N.Y. 2012)  Although the deferential standard of review continues to apply, the Court is required to consider if that conflict affected Hartford's denial of Ms. Kim's claim and appeal, procedurally or substantively, as a factor in determining if Hartford, abused its discretion.

5

*Glenn,* at 115,  *Durakovic*, supra.

Some of the factors that a court should consider in determining if the conflict affected Hartford's adjudication of the claim and appeal would be if the all the relevant factors were considered, *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995); if the evidence the Plan relied on was reliable, *Miller v. United Welfare Fund*, 72 F.3d 1066, (2d Cir. 1995); or if the administrator's conduct was deceptive or unreasonable in that particular case. *Durakovic*, at 140, citing *Firestone*, at 2351-53  and *McCauley v. First Unum*, 551 F.3d 126, 138 (2d Cir. 2008) Additionally, if the administrator's determination involved a question of compliance with a statute or a regulation, that issue should be reviewed *de novo. Wilkins v. Mason Tenders Dist Council Pen Fund*, 46 F.3d 1264, 1271 (2d Cir. 1995)

**C.    Hartford's conflict of interest affected its objectivity in reviewing Ms. Kim's claim.**

**1.    Hartford used the provisions of different policies in denying the claim and the appeal**.

Plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The U.S.  Department of Labor Claims Regulations ("Claims Regulations") require that in issuing a denial of a claim, the plan advise the claimant of the "specific plan provisions on which the determination is based". 29 CFR 2560.503-1(g)(1)(ii).

The February 14, 2012 claim denial letter only referred to the 24 month benefit

6

limitation:

> If You are Disabled because of:
> 1) Mental Illness that may result from any cause;
> 2) any condition that may result from Mental Illness;
> 3) alcoholism; or
> 4) the non-medical use of narcotics, stimulants, sedatives, hallucinogens or any other such substance; then subject to all the other provisions of the Policy, We will limit the Maximum Duration of the Benefit.
>
> Benefits will be payable:
> (1) For as long as You are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
> (2) if not confined or after You are discharged and are still Disabled, for a total of 24 month(s) for all such disabilities during your lifetime.

It did not reference or quote the Policy booklet's definition of "Mental Illness" or the DSM-IV. This omission was critical because Hartford relied primarily on the DSM-IV as the basis for deciding that Ms. Kim was not eligible to continue the payment of her benefit.

In the December 6, 2012 appeal denial letter, different policy provisions were quoted to define the 24 month benefit limitation:

> Payment of LTD Benefits is limited to 24 months of LTD benefits during your lifetime for Disability caused or contributed to by a Mental Disorder, alcoholism, drug addiction, chemical dependency, or your voluntary use of any intoxicant or narcotic unless used or consumed in accordance with the directions of a Physician. However, if you are a resident patient in a Hospital at the end of 24 months, this limitation will not apply while you remain continuously confined.

Also, the appeal denial letter did not use the term "Mental Illness". Rather, it used the term "Mental Disorder" and stated that under the policy, the term "Mental Disorder" meant "... a mental, emotional, or behavioral disorder."

These inconsistencies raise the question as to which policy the appeals reviewer relied upon in deciding the appeal, and was the use of the DSM - IV authorized by the

7

terms of the plan or was there a change in position by Hartford as to which were the appropriate policy provisions.

In Hartford's Administrative Record, another set of policy definitions were produced:

> Your **Disability** must result from:
> 1) accidental bodily injury;
> 2) sickness;
> 3) Mental Illness;
> 4) Substance Abuse; or
> 5) pregnancy.
> Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled. (AR:18)

> If You are **Disabled** because of:
> 1) Mental Illness that may result from any cause;
> 2) any condition that may result from Mental Illness;
> 3) alcoholism; or
> 4) the non-medical use of narcotics, stimulants, sedatives, hallucinogens or any other such substance; then subject to all the other provisions of the Policy, We will limit the Maximum Duration of the Benefit.

> Benefits will be payable

> (1)    for as long as You are confined in a hospital ...; or,
> (2)    if not confined, or after You are discharged and still Disabled, for a total of 24 month(s) for all such disabilities during Your lifetime."   (AR:10-11)

> **Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

> For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:
> 1) Mental Retardation;
> 2) Pervasive Developmental Disorders;

8

3) Motor Skills Disorder;
4) Substance-Related Disorders;
5) Delirium, Dementia, and Amnesic and Other
    Cognitive Disorders; or
6) Narcolepsy and Sleep Disorders related to
    a General Medical Condition.        (AR:18-19)

The differences in these letters demonstrate the failure of Hartford to comply with the Claims Regulations as well as to demonstrate that Ms. Kim did not receive a full and fair review of her claim.

**2.    Hartford failed to consider Ms. Kim's argument that reliance on the DSM-IV was inappropriate.**

As more fully discussed below, Hartford had a fiduciary obligation to consider Ms. Kim's argument that under current medical research, Bipolar Disorder is a physical illness of the brain.  There was no evidence in the appeal denial letter (AR:105-107) or the Administrative Record (AR:76-68)  that this issue was even considered in the adjudication of her  appeal. Rather all the letter did was acknowledge the "notion" that Bipolar Disorder 1 was a physical illness. (AR:106)

**II.    IN ADJUDICATING MS. KIM'S APPEAL, HARTFORD FAILED TO REVIEW HER ALLEGATIONS THAT HARTFORD'S CRITERIA FOR MENTAL ILLNESS AND MENTAL DISORDER  WERE NOT CONSISTENT WITH CURRENT MEDICAL RESEARCH, AND THAT FAILURE WAS A BREACH OF HARTFORD'S FIDUCIARY DUTY.**

ERISA, 29 USC section 1104(a)(1), provides for the prudent standard of care that a fiduciary of a plan must exercise in performing its duties:

a) Prudent man standard of care
    (1)    . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A)     for the exclusive purpose of:

(I)  providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;

(B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

©)     by diversifying the investments of a plan so as to minimize the risk of large losses, unless under the circumstances it is clearly not prudent to do so; and

(D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III

Although there is an obligation to follow the plan documents as long as they are consistent with the provisions of ERISA, 29 USC section 1104(a)(1)(D),there is a superceding obligation that the fiduciary comply with the statute as well as those obligations derived from the common law. (See *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S. Ct. 2833, 86 L. Ed. 2d 447 (1985)*

The duty to monitor the performance of plan service providers is well established in the common law. *Tribble v. Edison*, 135 S. Ct. 1823, 1828; 191 L. Ed. 2d 795, **795; 2015 U.S. LEXIS 3171, (May 18, 2015). In *Tribble*, the Supreme Court reviewed an issue involving an investment by an employee benefit plan, and stated that:

Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset. (*Id.*)

Similarly, US Department of Labor Regulations, published in 1975, required plans and its fiduciaries to periodically review the performance of their service providers and determine if those providers were performing according to their contracts and if the

10

services or processes continued to be efficacious for the plan. (29 CFR 2509.75-8, FR-17, Q + A[2] *Questions and answers relating to fiduciary responsibility under the Employee Retirement Income Security Act of 1974* [40 FR 47491, Oct. 9, 1975. Redesignated at 41 FR 1906, Jan. 13, 1976]    Therefore, Hartford, as the contract administrator and a plan fiduciary, had an obligation to insure that the criteria that it used, including the DSM-IV-TR, as it affected the eligibility plan benefits, was still medically viable and reflected current medical standards.

As part of her appeal, Ms. Kim raised the issue that the Plan should reconsider its utilization of the DSM-IV-TR because it did not reflect current research that bipolar disorder was a biologically based sickness and therefore a physical illness. (AR:211-215)

The administrative record, (AR:68-76)  shows that there was no response to this issue by Hartford, other than to point out in the letter denying her appeal that Ms. Kim did not show that she had any other physically disabling condition:

---

2.    29 CFR 2509.75-8

FR-17 Q:    What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?

A:    At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.

We acknowledge your position that Bipolar Disorder is biologically based, however, Bipolar Disorder is listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) published by the American Psychiatric Association as a mental Disorder and therefore, disabilities resulting from bipolar disorder are indeed limited under the terms of the policy to 24 months of LTD benefits.  (AR:106)

There was no attempt made to consider that the classification of Bipolar Disorder as a mental illness was medically incorrect or that the Plan's concept of Bipolar Disorder was not consistent with New York State Law, or the position of a United States government agency, the National Institute of Mental Health.

III.    **THE DEFINITION OF MENTAL ILLNESS AND MENTAL DISORDER ARE ARBITRARY AND CAPRICIOUS BECAUSE THEY ARE OBSOLETE AND DO NOT RECOGNIZE THAT CURRENT MEDICAL RESEARCH CONSIDERS THAT BIPOLAR DISORDER IS A SICKNESS.**

There are many illnesses which were previously considered mental disorders, such as Alzheimer's Disease, or  Schizophrenia, which are now considered physical brain illnesses because of medical research and diagnostic advances.

Section 3221(l)(5)(B)(ii) of the New York State Insurance Law, which is applicable to medical plans, but not disability plans, characterizes bipolar disorder as "a mental nervous emotional condition that is caused by a biological disorder of the brain":

For the purposes of this paragraph, the term "biologically based mental illness" means a mental, nervous, or emotional condition that is caused by a biological disorder of the brain and results in a clinically significant, psychological syndrome or pattern that substantially limits the functioning of the person with the illness. Such biologically based mental illnesses  are defined as schizophrenia/psychotic disorders, major depression, bipolar disorder, delusional disorders, panic disorder, obsessive compulsive disorders, bulimia and anorexia.

The National Institute of Health is an agency of the United States Department of

12

Health and Human Services and is the primary agency of the United States government

responsible for biomedical and health-related research. The National Institute of Mental

Health (NIMH) is part of the NIH.  The NIMH is the largest research organization in the

world specializing in mental illness.[3]  According to the National Institute of Mental Health:

> Bipolar disorder... is a serious disorder of the brain... Abnormalities in brain
> biochemistry, and in the structure and/or activity of certain brain circuits are
> responsible for the extreme shifts in mood, energy, and functioning that
> characterize bipolar disorder.[4]

The DSM-IV-catalogued mental disorders that was presumptively accurate in
1994 and as modified in 2000 when the DSM-IV-TR was published. Hartford used those
now outdated concepts in 2012 to deny a claim for benefits to otherwise eligible
participants. Quite simply, Hartford's reliance on the DSM-IV-TR was improper because
it did not correctly reflect the state of medical research in 2012 when Ms. Kim's claim
and appeal for continued benefits were denied.
The advances in medicine and medical research in the last 10 to 20 years are
without precedent. Genetics, imaging, surgical advances,  etc have given us insight to
issues into areas where previously, speculation was the basis of the etiology of these
illnesses.
Here,  there is specific proof that Bipolar disorder is a biological disease with
abnormalities in brain chemistry and brain circuitry as well as genetic implications.  See
Appeal Letter, and material cited.  (AR: 211-215)

Therefore, as a biological sickness, Bipolar Disorder should be treated as a

"sickness" under the Policy and the 24 month benefit limitation should not apply.

---

3.      http://www.nimh.nih.gov/about/index.shtml; viewed April 24, 2016.

4      Bipolar Disorder Research At the National Institute of Mental Health, National
        Insitute of Mental Health, Public Health Service, US Department of Health and
        Human Services, (website: http://www.slideshare.net/Pammy98
        /bipolar-disorder-research- at-the-nimh; viewed. Aug 8, 2012).

**IV.    The Policy's reference to the DSM-IV-TR for the purpose of determining if a disease is a physical sickness or a Mental Disorder is arbitrary and capricious. There are numerous illnesses listed in the DSM-IV-TR, which are not mental illnesses, but are improperly treated as a Mental Illness because of the Policy's definition of Mental Illness Disability .**

**A.    The Policy's definition of Disability due to a Mental Illness Disability is unreasonably broad.**

The Policy's definition of Mental Illness is unreasonably broad and could include any accidental bodily injury or sickness if there were a Mental Illness component to the participant's condition.  The Policy states that:

If You are Disabled because of:

(1) Mental Illness that may result from **any cause**;
(2) **any condition** that may result from Mental Illness; . . .

* * *

Benefits will be payable
(1)    for as long as You are confined in a hospital ...; or,
(2)    if not confined, or after You are discharged and still Disabled, for a total of 24 month(s) **for all such disabilities** during Your lifetime." (AR:10-12; Policy).  [Emphasis added].

**Mental Illness** means a mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association. A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.  (AR:18)

**B.    Under the policy, many physical illness would be subject to the 24 month limitation.**

These terms are so broad such that they subject any sickness or bodily injury which is co-morbid with a mental illness to the 24 month limitation.

The following examples from the DSM-IV-TR demonstrate that how pervasively this limitation could affect participants, including those with familial patterns of the mental illness.

14

The first example is a list of medical conditions that cause "mental symptoms" and is called "Mental Disorders due to a General Medical Condition". The DSM-IV-TR describes the condition as follows:

> A Mental Disorder Due to a General Medical Condition is characterized by the presence of mental symptoms that are judged to be the direct physiological consequence of a general medical condition. The term general medical condition refers to conditions that are coded on Axis III and that are listed outside the"Mental Disorders" chapter of ICD (Appendix G has a condensed list of these conditions. (TR:181)

> Appendix G, entitled "ICD-9-CM Codes for Selected General Medical Conditions

and Medication - Induced Disorders" describes the purpose of the following list as follows:

> To assist clinicians in finding the ICD-9-CM codes, this appendix provides a selective index of those ICD-9-CM codes for general medical conditions that are most relevant to diagnosis and care in mental health settings.(TR:867).[5]

The appendix lists then catalogues (1) selected medical conditions in each of eighteen categories that could cause mental symptoms; and (2) eleven categories of Medication-induced disorders:(TR:867-882) See Affirmation of Robert Bach, Exhibit 4 for the list of the diseases.

Most of these underlying medical conditions would be treated primarily by medical doctors rather than mental health practitioners. However, following the language of the policy, these conditions would be considered a Mental Illnesses, and therefore subject to the 24 month limitation.

The second example concerns a situation in which a participant had a debilitating

---

5. Note that the illnesses listed in Appendix G is only a partial list without any boundaries other than ICD Codes.

heart condition, cancer, or serious injuries from an automobile accident, and subsequently became depressed. In discussing the type of condition, Major Depressive Disorder", the DSM-IV-TR stated:

### Associated physical examination findings and general medical conditions

Up to 20%-25% of individuals with certain general medical conditions (e.g. diabetes, myocardial infarction, carcinomas, stroke) will develop Major Depressive Disorder during the course of their general medical condition. The management of the general medical condition is more complex and the prognosis is less favorable if Major Depressive Disorder is present. In addition, the prognosis of Major Depressive Disorder is adversely affected (e.g. longer episodes or poorer responses to treatment by concomitant chronic general medical conditions). (TR:371)

### Familial Pattern

Major Depressive Disorder is 1.5 -3 times more common among first-degree biological relatives of persons with this disorder than among the general population (TR:371).

There is obviously a mental component to the situation, and the medical illness is the primary issue, but under the terms of the Policy, the LTD benefit would be limited to 24 months.

The third example concerns situations in which medical illnesses are co-morbid with mental disorders, such as "Panic Disorder", which also has a genetic etiology. In discussing this situation, the DSM-IV-TR states:

### Associated physical examination findings and general medical conditions

Transient tachycardia and moderate elevation of systolic blood pressure may occur during some Panic Attacks. Studies have identified significant co-morbidity between Panic Disorder and numerous general medical symptoms and conditions, including, but not limited to, dizziness, cardiac arrhythmias, hyperthyroidism, asthma, chronic obstructive pulmonary disease, and irritable bowl syndrome. (TR:436)

16

**Familial Pattern**

First-degree biological relatives of individuals with Panic Disorder are up to 8 times more likely to develop Panic Disorder. If the age at onset of the Panic Disorder is before 20, first degree relatives have been found to be up to 20 times more likely to have Panic Disorder. However, in clinical settings, as many as one-half to three-quarters of individuals with Panic Disorder do not have first degree biological [r]elative. Twin studies indicate a genetic contribution to the development of Panic Disorder. (TR:437)

Here the terms of the Policy would limit the benefit to 24 months notwithstanding

the presence of a physical illness and a mental disorder which has a physical etiology.

C.    **The Policy inconsistently excludes conditions that would otherwise be subject to the 24 month limitation.**

The Policy's definition does exclude some illnesses listed in the DSM-IV from the

24 month limitation:

For the purpose of The Policy, Mental Illness does not include the following mental disorders outlined in the Diagnostic and Statistical Manual of Mental Disorders:

1) Mental Retardation;   [TR: 41-49]
2) Pervasive Developmental Disorders; [TR: 69-84];
3) Motor Skills Disorder; [TR: 56-58];
4) Substance-Related Disorders; [TR:191-295];
5) Delirium, Dementia, and Amnesic and Other Cognitive Disorders; [TR:135-185]; or
6) Narcolepsy [TR:609-614] and Sleep Disorders related to a General Medical Condition.  [TR:651-654]

The characteristics of these diseases are similar to some of the diseases that are not

excluded.

For example, Delirium Due to a General Medical Condition is excluded. According

to the DSM-IV-TR, its etiology is linked to a general medical condition:

"...[T] o  diagnose Delirium Due to a General Medical Condition, there must be evidence from the history, physical examination or laboratory findings that the cognitive disturbance is the direct psychological consequence of the general

17

medical condition", and that delirium is etiologically related to that general medical condition. Some of the symptoms include tremors, autonomic hyperactivity, e.g. tachycardia, sweating, flushed face, dilated pupils, elevated blood pressure, abnormal EEG's.  (TR:141)

The question is: Why is this mental illness, delirium, different from all other mental

illnesses to qualify for its exclusion from the 24 month limitation?

Similarly, there are specific exclusions for dementia due to the following medical

conditions. It is not apparent from the descriptions of these illnesses in the DSM-IV-TR

for the bases of the exclusion:

Dementia due to Parkinson's Disease: (TR:164)

Dementia is a "direct pathophysiological consequence Parkinson's disease";  dementia occurs in 20-60% of afflicted individuals.

Dementia due to Huntington's Disease (TR:165)

"Huntington's disease is an inherited  progressive degenerative disease of cognition, emotion, and movement'. It is "transmitted by a single autosomal dominate gene on the short arm of chromosome 4". "Offspring of individuals with Huntington's disease have a 50% chance of developing the disease''.

Dementia Due to Pick's Disease. (TR:166)

"Pick's disease is a degenerative disease of the brain that particularly affects the frontal and temporal lobes.  As in other frontal lobe dementias, Pick's disease is characterized clinically by changes in personality early in the course, deterioration of social skills, emotional blunting, behavioral disinhibition and prominent language abnormalities."   As the dementia progresses, it may either be accompanied by apathy or extreme agitation. It is "...usually diagnosed at autopsy" and is hard to distinguish from Alzheimer's or other frontal lobe created dementias .

Dementia Due to Creutzfeldt - Jakob Disease (TR:166)

"Dementia is judged to be the direct pathphysiological consequence a Creutzfeldt - Jakob Disease." It is a brain disease of the central nervous system caused by transmittable agents known as "slow - viruses" or prions.  "... the disease can only be confirmed only by biopsy or at autopsy with

18

the demonstration of spongiform neuropathological changes". It is a human variant of mad cow disease.

Based on the terms of the policy and the exceptions that have been created, Hartford has breached its fiduciary duty to Ms. Kim because the denial was based on outdated research that was done before 2000 and that the inconsistency of the terms and conditions of the Policy . Cf. *Donna v. Memorial Sloan Kettering,* 2010 US Dist LEXIS 21717 (SDNY 2010) aff'd 487 Fed. Appx 670, 2012 US App. LEXIS 22925 (2nd Cir. 2012).

## CONCLUSION

The determination by Hartford that Ms. Kim is not entitled to LTD benefits after 24 months is premised on a series of improper actions by Hartford and the Court should grant Ms. Kim's Motion for Summary Judgment.

April 29, 2016

New York, NY

Robert Bach, Esq
60 East 42nd Street
40th Floor
New York, NY
212-867-4455
rjbachesq@hotmail.com
Attorney for Plaintiff