UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                        :
MARRY KIM,                                                              :   15-civ-2474-ERK-RER
                                                                        :
           Plaintiff,                                                 :
                                                                        :
  -against-                                                            :
                                                                        :
THE HARTFORD LIFE INSURANCE COMPANY, *et                                :
al*.,                                                                   :
                                                                        :
          Defendants.                                                :
                                                                        :
------------------------------------------------------------------------x


**Hartford's Brief In Opposition to Plaintiff's Summary Judgment Motion**




Begos Brown & Green LLP
Attorneys for Hartford Life Ins. Co.
2425 Post Road
Southport, CT 06890
(203) 254-1900

**Table of Contents**

Preliminary Statement.................................................................................................................. 1

The DSM and Mental Disorders ................................................................................................. 2

Argument ..................................................................................................................................... 5

    I.   Hartford did not breach its fiduciary duty ........................................................................ 5

    II.  There is no genuine issue about the language of the Plan ................................................ 6

    III. The Court should confirm Hartford's determination......................................................... 7

Conclusion ................................................................................................................................... 9

The parties are simultaneously briefing motions for summary judgment. Defendant, Hartford Life Insurance Company ("Hartford"), has served its summary judgment motion which sets forth, in detail, the undisputed facts and legal issues compelling judgment for Hartford. Hartford submits this memorandum of law in opposition to plaintiff's motion for summary judgment. Hartford will not repeat the facts and arguments stated in its motion papers, but will, instead, respond to specific arguments plaintiff makes in her motion.

**Preliminary Statement**

There is no dispute that plaintiff's disability was due solely to bipolar disorder, and that bipolar disorder was a mental disorder listed in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). There is no credible dispute that the Plan, by its express terms, limits benefits payable for such disabilities to twenty-four months. Hartford's summary judgment motion demonstrated that it is common for disability plans to limit benefits payable for disabilities due to mental illness, and that courts routinely enforce those limits.

The core of plaintiff's claim is that an employee benefit plan cannot limit benefits payable for disabilities due to a mental illness if the mental illness has a physical cause. But when one considers that an employee benefit plan does not have to pay any benefits for any disabilities at all, it is easy to conclude that an employer who establishes a plan can draw lines limiting benefits virtually wherever it wants. The employer can: cover employees in some divisions and not others; provide benefits for limited periods; change the definition of disability after a period of time; limit benefits for some disabilities; and reduce benefits based on employees' receipt of other income. Given the large leeway in plan design that ERISA gives to plaintiff's employer, the fact that the Plan limits benefits for disabilities due to mental illnesses listed in the DSM is unremarkable.

Really, what plaintiff is disputing is semantics. She seems to agree that it is fine to limit benefits for disabilities due to a mental illness, but she argues that it is wrong to classify an illness as "mental" if it might have a physical cause. But the semantic argument is irrelevant, because the Plan clearly identifies what is, and is not, a mental illness, by defining the term as the list of disorders classified in the then-current edition of the DSM (with certain specific exceptions). To be sure, plaintiff is simply wrong when she claims that a mental illness cannot or should not have a physical cause. The consensus in the psychiatric community (as explained in the DSM) is that "mental" disorder is the most appropriate term for a whole universe of disorders that may have physical etiologies.

Plaintiff's challenge to Hartford's determination is without merit. That determination is reasonable and supported by substantial evidence, and the Court should confirm it.

## The DSM and Mental Disorders

Because plaintiff makes many assertions about the DSM and mental disorders, Hartford will provide some detail about these matters.

Plaintiff agrees that the edition of the DSM current when her claim determination was made "classified Bipolar Disorder as a mental illness." Plaintiff's Br., p. 1.[1]

---

[1] Both parties agree that the Fourth Edition of the DSM ("DSM-IV") governs, though plaintiff cites to the "Text Revision" of the Fourth Edition ("DSM-IV-TR"). For present purposes, this is a distinction without a difference, because the Text Revision still is the Fourth Edition, and the changes were minimal. For example, the Text Revision confirms that it did not change the classification of any disorders. DSM-IV-TR, p. xxix ("all proposed changes were limited to the text sections (e.g. Associated Features and Disorders, Prevalence). No substantive changes in the [diagnostic] criteria sets were considered, nor were any proposals entertained for new disorders, new subtypes, or changes in the status of the DSM-IV appendix categories."). Copies of cited pages are annexed to the Declaration of Patrick W. Begos.

Plaintiff argues, or at least implies, that the Plan's reliance on the DSM-IV for the definition of mental illness left it out of step with "consensus" in the psychiatric field. But the very mission of the DSM-IV was to determine and describe that consensus:

> The utility and credibility of DSM-IV require that it focus on its clinical, research, and educational purposes and be supported by an extensive empirical foundation. … An official nomenclature must be applicable in a wide variety of contexts. DSM-IV is used by clinicians and researchers of many different orientations (e.g., biological, psychodynamic, cognitive, behavioral, interpersonal, family/systems). It is used by psychiatrists, other physicians, psychologists, social workers, nurses, occupational and rehabilitation therapists, counselors, and other health and mental health professionals.

DSM-IV-TR, p. xxiii.

DSM-IV achieved this consensus by obtaining input from many experts, through an organization of Task Forces, Work Groups and Advisors that "was designed to increase participation by experts in each of the respective fields. … The involvement of many international experts ensured that DSM-IV had available the widest pool of information and would be applicable across cultures." DSM-IV-TR, p. xxiii. In fact, "more than 1,000 people (and numerous professional organizations)" participated in preparing DSM-IV. DSM-IV-TR, p. xix.

Plaintiff argues that a disorder cannot be a "mental" disorder if it has a physical cause, but the DSM-IV plainly takes a different view. DSM-IV makes clear that its classification of a mental disorder is based on how it manifests itself in the patient, not on its etiology:

> In DSM-IV, each of the mental disorders is conceptualized as a clinically significant behavioral or psychological syndrome or pattern that occurs in an individual and that is associated with present distress (e.g., a painful symptom) or disability (e.g., impairment in one or more important areas of functioning) or with a significantly increased risk of suffering death, pain, disability, or an important loss of freedom. … *Whatever its original cause, it must currently be considered a manifestation of a behavioral, psychological, or biological dysfunction in the individual.*

DSM-IV-TR, pp. xxxi (emphasis added).

Thus, DSM-IV confirms that a disorder can be a mental disorder even if it is the result of "biological dysfunction." Indeed, plaintiff necessarily concedes as much when she calls bipolar disorder a "biologically based *mental illness,*" Plaintiff's Br., p. 12 (emphasis added).

Consistent with that general approach, DSM-IV makes clear that bipolar disorder is diagnosed by its symptoms, rather than etiology: "[t]he essential feature of Bipolar I Disorder is a clinical course that is characterized by the occurrence of one or more Manic Episodes (see p. 357) or Mixed Episodes (see p. 362)." DSM-IV-TR, p. 382. It goes on to explain that there are "no laboratory features that are diagnostic of Bipolar I Disorder[,]" but notes: "imaging studies comparing groups of individuals with Bipolar I Disorder with groups with Major Depressive Disorder or groups without any Mood Disorder tend to show increased rates of right-hemispheric lesions, or bilateral subcortical or periventricular lesions in those with Bipolar I Disorder." *Id.*, pp. 384-85. It also states that there is "strong evidence of a genetic influence for Bipolar I Disorder." *Id.*, p. 386. Thus, there can be no dispute that DSM-IV classified Bipolar Disorder as a mental disorder, notwithstanding the evidence that its etiology may include at least some physical or genetic factors.

In sum, plaintiff insists that her employer, Hartford, and the Court all must define mental illness in a way to exclude any disorder that may have a physical etiology. But that is contrary to how mental disorders are defined and classified by the medical community. The consensus in that community (as reflected in DSM-IV) is that etiology is not a determining factor in whether a disorder is a mental disorder. Indeed, by defining mental illness with reference to those disorders classified in the DSM, the Plan avoided exactly the type of semantic argument plaintiff is attempting to make.

**Argument**

## I. Hartford did not breach its fiduciary duty

Hartford established in its Opening Brief that its fiduciary duty was to uphold the terms of the Plan, and that its fiduciary duty could not require it to change or disregard the Plan. Hartford Br., pp. 8-16. Plaintiff recognizes that a fiduciary has "an obligation to follow the plan documents[.]" Plaintiff's Br., p. 10. But she contends that "there is a superseding obligation that the fiduciary comply with the statute as well as those obligations derived from the common law." Plaintiff does not cite any allegedly governing common law obligation that she contends Hartford violated. Nor does "the statute" – ERISA – impose any duty or obligation on Hartford to modify, amend or update the Plan. To the contrary, ERISA gives that power exclusively to the Plan Sponsor. Hartford Br., pp. 8-12. Plaintiff concedes that SVA is the Plan Sponsor. Plaintiff's Rule 56.1 Statement, ¶ 6.

Plaintiff's reliance on *Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015), is unfounded. *Tibble* dealt with the monitoring of *investments* by a fiduciary of a retirement plan, and, more specifically, concerned "whether a fiduciary's allegedly imprudent retention of an investment is an 'action' or 'omission' that triggers the running of the 6–year limitations period." *Tibble,* 135 S. Ct. at 1825. The Supreme Court did not suggest, much less hold, that a fiduciary charged with determining claims under a disability plan has a duty to modify or amend plan terms.

The Department of Labor "Q and A" plaintiff cites also has no bearing on this case. The Q and A states that appointing fiduciaries should periodically review the performance of their appointees "to ensure that their performance *has been in compliance with the terms of the plan*[.]" Pl. Br., p. 11 (emphasis added). This statement by the Department of Labor merely recognizes that a fiduciary's obligation to adhere to the plan includes an obligation to ensure that its appoin-

5

tees adhere to the plan. But plaintiff does not allege that Hartford failed to review the performance of a service provider it appointed, or that a service provider (or Hartford) violated the Plan. To the contrary, plaintiff complains that Hartford *did* follow the Plan as it is written.

Plaintiff concludes her discussion of this Q and A with a *non sequitur*, claiming that a fiduciary's obligation to ensure that its appointees follow their contractual obligations is equivalent to "an obligation to insure that the [mental illness limitation] … was still medically viable and reflected current medical standards." These are not remotely equivalent; the former talks of ensuring that contractual obligations are upheld, while the latter talks of changing the Plan. As Hartford discussed at length in its opening brief, a fiduciary of an ERISA plan has no obligation, or even ability, to modify the plan.

## II. There is no genuine issue about the language of the Plan

Plaintiff seeks to create a dispute about the terms of the Plan, Pl. Br., pp. 6-8, but she admits the applicable Plan document and Plan terms. She admits the Plan was funded by "policy number GLT 864023." Complaint, ¶ 14. Elsewhere in her complaint, plaintiff admits the key terms of the mental illness limitation. *Id.*, ¶¶ 31, 42, 45, 46. In her Statement of Undisputed Facts, plaintiff admits the relevant Plan document. Plaintiff's Rule 56.1 Statement, ¶¶ 8, 13, 23. In addition, her brief acknowledges the key provisions of the mental illness limitation. Pl. Br., p. 14.

There is no dispute that plaintiff's attorney obtained the Plan document from Hartford before he administratively appealed the determination on her behalf. AR221. Plaintiff does not allege that the Plan document produced in this action, AR1-64, is any different than the Plan document Hartford provided to her attorney before the administrative appeal. To avoid any dispute on this issue, Hartford submits with this opposition the Declaration of Daniel J. Zych, confirming that AR1-64 contains the Plan.

6

Hartford explained in its Opening Brief that any inaccuracy in its quotation of the Plan in its letter determining plaintiff's administrative appeal did not prejudice plaintiff or otherwise preclude a full and fair review. Hartford Br., pp. 16-17. Nothing in plaintiff's motion challenges that explanation.

### III. The Court should confirm Hartford's determination

Plaintiff agrees that the Court will review Hartford's determination under the deferential, arbitrary and capricious standard. Pl. Br., p. 5; Hartford Br., pp. 6-8.

Plaintiff does not challenge the reasonableness of Hartford's determination under the *written* terms of the Plan. Even if she had argued that the Plan is ambiguous, then the Court must accept Hartford's interpretation, as long as that interpretation is reasonable. *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan*, 698 F.2d 593, 601 (2d Cir. 1983), *cert. denied*, 464 U.S. 829 (1983) ("Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control."). Plainly, an interpretation that hews to the consensus established by the DSM-IV is reasonable. *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005) (defendant "exercised its authority in a plainly reasonable manner by consulting the DSM-IV, an objective authority on the subject of mental disorders").

Plaintiff asserts that Hartford did not give sufficient consideration to her arguments, such as "that the classification of Bipolar Disorder as a mental illness was medically incorrect, or that the Plan's concept of Bipolar Disorder was not consistent with New York State Law[.]" Pl. Br. p. 12. Hartford reasonably determined that none of plaintiff's arguments entitled her to continued benefits under the Plan. Moreover (though it is not necessary to the resolution of this suit), the DSM-IV establishes that the classification of bipolar disorder as a mental illness was medically correct.

7

And plaintiff does not contend that the Plan violates New York law. *See* Pl. Br., p. 12 (admitting the statute she cites is "applicable to medical plans, but not disability plans"). Thus, Hartford's determination was reasonable, supported by substantial evidence, and consistent with the language of the Plan.

Plaintiff also asserts a series of hypotheticals about illnesses (she does not claim she has) that she claims would be subject to the mental illness limitation. Pl. Br., pp. 14-17. We do not understand plaintiff's point, because the reasonableness of Hartford's determination of plaintiff's claim cannot turn on what decisions might be made in other, hypothetical, claims. Nonetheless (to the extent we understand them), plaintiff's hypotheticals are simply wrong. For example, she seems to suggest that any of the "General Medical Conditions" listed in Appendix G to the DSM-IV would be considered mental illnesses subject to limited benefits under the Plan. But the Plan expressly defines "Mental Illness" as "*a mental disorder* as listed in" the DSM-IV. AR19 (emphasis added). The DSM-IV does not list the general medical conditions in Appendix G as "mental disorders." To the contrary, the Appendix lists some "conditions classified outside the 'Mental Disorders' chapter of ICD-9-CM [which] are also important for clinical diagnosis and management in mental health settings." DSM-IV-TR, p. 867. Hartford did not determine that plaintiff's benefits were limited because she suffered from a medical condition listed in Appendix G, nor has plaintiff asserted that she was disabled due to such a condition.

Similarly, plaintiff argues that a claimant with a debilitating physical condition, such as a heart condition, who subsequently became depressed, would have his benefits limited under the Plan. Pl. Br., p. 16. But a claimant who has a heart condition severe enough to meet the Plan definition of disability is disabled due to that heart condition, and would not be disabled solely "because of … Mental Illness[.]" AR10. Thus, benefits for such a claimant would not be limited.

8

This is precisely why Hartford advised plaintiff, when it notified her that benefits would be terminated, that benefits would continue only if she was "unable to perform the duties of your occupation due to a physical condition. At this time, we do not have evidence of any physical disability that is preventing you from working." AR113.

After arguing that the Plan includes too many conditions in the mental illness limitation, plaintiff switches gears and argues that the Plan excludes certain mental disorders from the mental illness limitation (and thus does not limit benefits for disabilities due to those disorders). SVA's decision to exclude certain mental disorders from the limitation does not require the Plan to pay unlimited benefits for plaintiff's claim.

## Conclusion

Plaintiff has no basis to establish that Hartford breached its fiduciary duty or abused its discretion. Therefore, the Court should deny plaintiff's motion; grant Hartford's motion, and dismiss this action.

Dated: June 3, 2016

        BEGOS BROWN & GREEN LLP
        By: S/ Patrick W. Begos (PB4372)
        Attorneys for Defendant
        2425 Post Road
        Southport, CT 06890
        (203) 254-1900