| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|
| MARRY KIM,<br><br>      Plaintiff,<br><br>  – against –<br><br>THE HARTFORD LIFE INSURANCE COMPANY<br><br>      Defendant. | **MEMORANDUM & ORDER**<br><br>15-cv-2474 (ERK) (RER) |

KORMAN, *J.*:

  Under its employee welfare benefit plan (the "Plan"), the School of Visual Arts (the "School") offers a long-term disability insurance policy issued by Hartford Life Insurance Company ("Hartford"). Admin. R. at 58. The policy is incorporated into the Plan, *id.*, which provides that an employee with a long-term disability resulting from accidental bodily injury, sickness, or pregnancy receives benefits until retirement, *id.* at 7–8, 18. The Plan caps benefits at 24 months for employees who are disabled because of (1) a "Mental Illness that results from any cause" or (2) "any condition that may result from Mental Illness." *Id.* at 10–11. The Plan defines "Mental Illness" as:

> [A] mental disorder as listed in the current version of the Diagnostic and Statistical Manual of Mental Disorders ["DSM-IV"] . . . . A Mental Illness may be caused by biological factors or result in physical symptoms or manifestations.

*Id.* at 18.

  Under the Employee Retirement Income Security Act of 1974 ("ERISA"), the School is the Plan's sponsor and the administrator, responsible for creating, amending, and managing the Plan. *Id.* at 58. In contrast, Hartford is the claims fiduciary, charged with making eligibility

1

determinations and interpreting the Plan's provisions. *Id*. One of these eligibility determinations is at issue here. Kim, a 54-year-old woman born in 1963, was employed by the School from 2003 until 2009, when she became disabled by bipolar disorder. *Id.* at 327. In May 2010, she began to collect long-term disability benefits under the Plan. *Id.* at 113. Two years later, her benefits were terminated by Hartford pursuant to the Plan's 24-month cap for mental disabilities. *Id.* at 112. Kim appealed this decision internally to Hartford, arguing, inter alia, that "Bipolar Disorder is a biologically based illness, and therefore, it is a physical condition." *Id.* at 214. Hartford denied Kim's appeal primarily because the Plan defines "mental illness" as those listed in the DSM-IV. *Id.* at 106. Bipolar disorder is listed as a mental disorder in the DSM-IV. *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 382–96 (4th ed. text rev. 2000). The parties now cross-move for summary judgment.

**DISCUSSION**

Because the Plan provides Hartford with the "full discretion and authority to determine eligibility for benefits," Admin. R. at 17, Hartford's decision to terminate Kim's benefits is reviewed under an arbitrary and capricious standard. *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). Kim also argues that Hartford breached its fiduciary duty by failing to consider revisions to the Plan's definition of "mental illness." *See* Pl.'s Mot. for Summ. J. at 9–12. Whether such a fiduciary duty exists under ERISA is a question of law and thus is reviewed de novo. *See Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210 n.7 (2d Cir. 2015).

## I. *Alleged Change in Rationale*

Kim argues that Hartford changed its rationale for terminating her benefits from the initial termination to the subsequent internal appeal. *See* Pl.'s Mot. for Summ. J. at 5–9. Specifically, in its June 2010 letter approving Kim's application, Hartford stated that her benefits would be subject

2

to the Plan's 24-month cap for mental disabilities and quoted the relevant Plan provision. Admin. R. at 132–33 (quoting *id.* at 10–11). Subsequently, in its February 2012 initial termination letter, Hartford quoted this provision again. *Id.* at 112 (quoting *id.* at 10–11). Nevertheless, in its December 2012 letter denying Kim's appeal, Hartford quoted slightly different language from an outdated 2003 insurance policy:

> "Payment of [long-term disability] Benefits is limited to 24 months of [long-term disability] Benefits during your lifetime for Disability caused or contributed to by a Mental Disorder . . . ." The Policy also provides the following definition: "Mental Disorder means a mental, emotional, or behavioral disorder."

*Id.* at 105 (quoting *id.* at 336).

Despite the close similarity between this quoted language and the relevant Plan provision, *compare id.* at 336 *and id.* at 10–11, Kim argues that Hartford's error suggests either that the appeals reviewer used the wrong policy to terminate her benefits, or that Hartford has stopped relying on the DSM-IV's classifications for mental disorders. *See* Pl.'s Mot. for Summ. J. at 7–9. This argument is contradicted by the rest of Hartford's appeal denial letter. In the latter part of the letter, Hartford explained that "Bipolar Disorder is listed in the [DSM-IV] . . . as a mental disorder and therefore, disabilities resulting from bipolar disorder are indeed limited under the terms of the [Plan] to 24 months of [long-term disability] benefits." Admin. R. at 106. Moreover, Hartford concluded the letter by stating that "[f]or the reasons documented above, we have determined that the decision to apply the [Plan] provision limiting benefits due to a Mental Disorder effective May 3, 2012 was appropriate and that decision will be maintained." *Id.* This sentence indicates that Hartford was referring back to the correct Plan provision that it relied on in its earlier letters, and that its misquotation of the wrong insurance policy was nothing more than an isolated error. Thus, read as a whole, Hartford's appeal denial letter neither deprived Kim of a full and fair review,

3

ERISA § 503, 29 U.S.C. § 1133, nor violated the Department of Labor's claim procedure regulation, 29 C.F.R. § 2560.503–1(g)(1)(ii). Moreover, Kim has failed to demonstrate that Hartford's conflict of interest—it both evaluates and pays claims—influenced the termination of her benefits. *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009).

## II. *Reliance on the DSM-IV*

Kim also argues that Hartford's reliance on the DSM-IV to define "mental illness" was arbitrary and capricious because the definition is obsolete, overbroad, and excludes certain conditions that otherwise would be subject to the 24-month cap. *See* Pl.'s Mot. for Summ. J. at 12–19. In a virtually indistinguishable case, however, the Second Circuit held that it is not arbitrary and capricious for a plan's fiduciary to terminate an employee's benefits for bipolar disorder based on a plan provision limiting benefits for mental disabilities and the DSM-IV's listing of bipolar disorder as a mental disorder. *Fuller v. J.P Morgan Chase & Co.*, 423 F.3d 104, 107 (2d Cir. 2005). There, the employee's long-term disability benefits were terminated after 18 months pursuant to a plan provision that limited the duration of benefits for disabilities "aris[ing] from a *mental or emotional* disease or disorder." *Id.* at 105–06 (internal quotation marks omitted). The Second Circuit reasoned that the plan's fiduciary "exercised its authority in a plainly reasonable manner by consulting the DSM–IV, an objective authority on the subject of mental disorders." *Id.* at 107. In the present case, where the Plan explicitly defines mental illness in terms of the mental disorders listed in the DSM-IV, the holding of *Fuller* applies with even greater force. Thus, it was not arbitrary and capricious for Hartford to rely on the DSM-IV.

## III. *Alleged Fiduciary Duty*

Finally, Kim argues that Hartford breached its fiduciary duty to "review the [Plan's definition of mental illness] to determine if it was valid and then advise [the] Plan Administrator

4

[i.e., the School] of its review." Reply in Supp. of Pl.'s Mot. for Summ. J. at 1. Under ERISA, a claims fiduciary "owes a fiduciary duty not just to the individual participant or beneficiary whose claim is under review, but to all of the participants and beneficiaries of the plan. As a result, ERISA requires a balance between the obligation to guard the assets of the trust from improper claims [and] the obligation to pay legitimate claims. In striking this balance with respect to a particular claim, a fiduciary must, among other things, assess whether the claimant has furnished sufficient evidence that he is entitled to the benefits he seeks." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 211–12 (2d Cir. 2015) (internal quotation marks and citations omitted). Outside of this specific claims processing context, however, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (citing *Adams v. Avondale Industries, Inc.,* 905 F.2d 943, 947 (6th Cir. 1990)). In this regard, all that is required is the provision of "a procedure for amending [the] plan, and for identifying the persons who have authority to amend the plan." ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3).

In light of this distinction between claims processing and plan administration, it is implausible that Hartford, as the claims fiduciary charged with making case-by-case eligibility determinations, would have a fiduciary duty to consider whether the Plan's provisions need to be revised. The authority to amend the Plan lies entirely with the School, as the plan sponsor and administrator. And as the Supreme Court has indicated, the School has no fiduciary duty to do so either. *See Curtiss-Wright Corp.*, 514 U.S. at 78 (quoting *Adams*, 905 F.2d at 947, for the proposition that a plan sponsor "does not act in a fiduciary capacity when deciding to amend . . . a welfare benefits plan"). Thus, even if Kim were to bring suit against the School, which she voluntarily dismissed from this case, she would not have a cognizable fiduciary duty claim. *Cf.*

5

*id.* (holding that it is not a cognizable claim under ERISA that a plan sponsor "amended its plan to deprive [employees] of health benefits").

Moreover, the only case that Kim cites in support of her fiduciary duty claim is inapposite. In *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825, 1828 (2015), the Supreme Court explored the "contours of an ERISA fiduciary's duty" with respect to the selection and monitoring of mutual fund investments for a 401(k) savings plan. Drawing on trust law, it held that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 1829. It is difficult to see how *Tibble* has any relevance here. Interpreting Kim's position most charitably, she appears to be arguing that the monitoring of investments under the kind of savings plan at issue in *Tibble* is analogous to the monitoring of medical definitions under the Plan here. *See* Reply in Supp. of Pl.'s Mot. for Summ. J. at 1. But this analogy is implausible. Unlike an investments fiduciary of the kind discussed in *Tibble*, Hartford has no authority to modify the Plan's definition of mental illness or any other Plan provision. Kim's similarly implausible invocation of Department of Labor regulations requiring "fiduciaries to periodically review the performance of their service providers," Pl.'s Mot. for Summ. J. at 10, is rejected for the same reasons.

## CONCLUSION

Kim's motion for summary judgment is denied, and Hartford's cross-motion is granted.

**SO ORDERED.**

Brooklyn, New York
June 14, 2017

*Edward R. Korman*
Edward R. Korman
United States District Judge

6